UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ARNETT JONES, III,          )
                            )
          Plaintiff,        )     Case No. 4:06-cv-10
                            )
v.                          )     Honorable Robert Holmes Bell
                            )
WILLIAM R. IRVIN, et. al.,  )
                            )
          Defendants.       )
_____)

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the intitial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff is presently incarcerated at Carson City Correctional Facility. In his *pro se* complaint, he sues Inspector William Irvin and Warden Carol Howes of the Lakeland Correctional Facility (LCF); Director Patricia Caruso of the Michigan Department of Corrections (MDOC); and Warden Kurt Jones of the Carson City Correctional Facility.

Plaintiff's complaint concerns his alleged involvement in a conspiracy to smuggle marijuana into LCF. On February 11, 2004, LCF prison staff placed Plaintiff in temporary segregation because of the conspiracy allegations. In violation of his due process rights and MDOC Policy Directives, Plaintiff complains that he did not receive a hearing for sixteen days while in temporary segregation, and that he was subsequently transferred from LCF to Carson City Correctional Facility. After an investigation, the Michigan State Police eventually cleared Plaintiff of the conspiracy charges. On April 6, 2004, however, Plaintiff received major misconduct charges from LCF Inspector Irvin for his involvement in the conspiracy. Plaintiff ultimately was found guilty of the major misconduct charges and re-classified from a Security Level I to Security Level IV at the Carson City Correctional Facility. In the Fall of 2004 and 2005, the Michigan Parole Board also denied Plaintiff's parole, supposedly due to his involvement in the alleged conspiracy and his subsequent classification to a higher security level.

For relief, Plaintiff requests compensatory, punitive and nominal damages, release from MDOC custody, and "for each [D]efendant to be held accountable for his lost wages and pain and suffering along with mental anguish." Pl.'s Compl. at 5.

II.     Lack of Exhaustion of Administrative Remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El*, 215 F.3d at 642. A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. *Id.*[1] In addition, a prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505

---

[1] To assist prisoners in meeting this requirement, this court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. L.R. 25(a). Plaintiff's complaint was filed on the form.

(6th Cir. 2001); *accord Harbin-Bey v. Rutter*, 420 F.3d 578 (6th Cir. 2005); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

The Michigan Department of Corrections has a three-step prison grievance process. While prisoners may generally grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement", *see* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (effective 12/19/03), some issues are considered non-grievable, including decisions made by hearing officers in major misconduct proceedings and by parole board members in parole hearings. *See* Policy Directive 03.02.130, ¶ F(1) - (2). Because misconduct convictions and parole board decisions are non-grievable, the Court will assume that Plaintiff has exhausted his available administrative remedies with regard to his major misconduct conviction and 2004 and 2005 parole board denials. Plaintiff's claims for (i) his increase in security level, (ii) the delay in his temporary segregation hearing, and (iii) his transfer from LCF to Carson City Correctional Facility, however, are the types of claims that may be grieved through the three-step prison grievance process. *See* Policy Directive 03.02.130, ¶ E. Plaintiff filed three grievances concerning the claims asserted in his complaint.

In Grievance Nos. DRF-04-05-0715-21A and DRF-04-09-1486-21A, Plaintiff argues that the Carson City Correctional Facility violated MICH. DEP'T OF CORR. Policy Directive 05.01.130 (effective 3/1/04) by increasing his security level for his major misconduct conviction. For Grievance No. DRF-04-05-0715-21A, Plaintiff attached his Step II and Step III grievance appeal form, and Step II and Step III grievance responses to his complaint. Plaintiff, however, failed to

attach his Step I grievance.  For Grievance No. DRF-04-09-1486-21A,  Plaintiff only attached his Step I grievance form and response to the complaint.  In both grievances, Plaintiff failed to identify any of the Defendants. "[F]or a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process." *Burton,* 321 F.3d at 575.  Plaintiff's failure to allege or show that he named the Defendants in his Step I grievance alone precludes a finding of exhaustion.  *Id.* at 576 n.4 (claim of retaliation, which was initially raised by prisoner in Step II of the grievance process was not administratively exhausted).  Without any evidence from Plaintiff that he identified any of the Defendants in any administrative proceeding or that he exhausted his administrative remedies with respect to each of the Defendants, Plaintiff is unable to establish with particularity that he exhausted his available administrative remedies against the Defendants. Accordingly, the Court finds that Plaintiff has failed to demonstrate exhaustion of his available administrative remedies.

In Grievance No. LCF-04-05-0335-07b, Plaintiff claims that LCF prison staff held him in temporary segregation for sixteen days without a hearing in violation of MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶ H (effective 2/14/05).  While Plaintiff attached his Step I and Step III grievance responses to his complaint, he again failed to allege or show, by attaching his Step I grievance form to his complaint, that he named any of the Defendants in his Step I grievance.  *See Burton*, 321 F.3d at 576 n.4.  Therefore, the Court finds that Plaintiff has failed to demonstrate exhaustion of available administrative remedies against Defendants Irvin, Howes, Caruso, and Jones for his temporary segregation claim.

Finally, Plaintiff failed to file any grievance against Defendants for transferring him from LCF to Carson City Correctional Facility on February 27, 2004. *See Vandiver*, 2002 WL 31166925, at *2 ("[t]he exhaustion requirement would be defeated if an inmate were permitted to raise additional issues and name additional defendants in a § 1983 action that were never mentioned in the grievance."). Because Plaintiff's complaint contains both exhausted and unexhausted claims, his complaint must be dismissed for lack of total exhaustion. *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶ G(4) (effective 4/28/03). The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.1997).

Ordinarily, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). The Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown*, 139 F.3d at 1103. Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

### III.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Misconduct Conviction

Plaintiff claims that he was wrongly convicted of a major misconduct for conspiring to smuggle marijuana into the Lakeland Correctional Facility and requests release from MDOC custody. The Supreme Court has held that a claim for declaratory relief and monetary damages that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that

a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges). *See also Muhammad v. Close*, 540 U.S. 749 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad*, the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good-time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Misconduct Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ DDD (effective 2/14/05). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[2] Accordingly, because Plaintiff has not shown that his conviction has been invalidated, his claim is not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, No. 02-2460, 2004 WL 1326066 (6th Cir. June 10, 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, No. 03-1411, 2003 WL 22976618 (6th Cir. Dec. 8, 2003) (same); *Harris v. Truesdell*, No. 03-1440, 2003 WL 22435646 (6th Cir. Oct. 23, 2003) (*Heck*-barred claim fails to state a claim and is frivolous).

B.   Parole Denial

Plaintiff claims that he was denied paroled due to his major misconduct conviction and heightened security classification. He fails to raise a claim of constitutional magnitude. Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has

---

[2] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993);

*Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for his parole denials.

### C. Segregation, Prison Placement and Security Classification

Plaintiff argues that (i) the delay in his temporary segregation hearing, (ii) his transfer from LCF to Carson City Correctional Facility, and (iii) his increase in security level violated his due process rights. To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). In *Sandin v. Conner*, 515 U.S. 472, 486 (1995), the Supreme Court held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

First, Plaintiff fails to implicate a liberty interest for the MDOC's delay in holding a temporary segregation hearing according to Policy Directive 04.05.120, ¶ H. In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an

atypical and significant hardship within the context of his prison life. The Sixth Circuit has repeatedly found that confinement to segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated.

Plaintiff also complains that his transfer from LCF to the Carson City Correctional Facility and the increase in his security classification from Security Level I to Security Level IV[3] violated his due process rights. Plaintiff has no constitutional right to any particular placement or security classification. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State."*Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin*, 515 U.S. at 486; *Rimmer-Bey*, 62 F.3d at 790-91; *Mackey*, 111 F.3d at 460. The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461

---

[3]The MDOC security classifications, from least to most secure, are as follows: Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR. Policy Directive 05.01.130, ¶ B (effective 3/1/04).

U.S. at 245; *Moody*, 429 U.S. at 88 n.9; *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005) (a prisoner's increase in security classification for his designation as a member of a security threat group failed to state a due process claim "because a prisoner has no constitutional right to a specific security classification"); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). In the absence of a recognized liberty interest, placing Plaintiff in higher security level facility or increasing his security classification raises no issue of constitutional magnitude. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim*, 461 U.S. at 250.

The Supreme Court, however, recently held in *Wilkinson v. Austin*, 125 S. Ct. 2384, 2389, 2394-95 (2005), that a prisoner's transfer to a "supermax" facility was sufficiently atypical to implicate the due process clause because the conditions at the "supermax" facility were far more restrictive than any other form of incarceration in Ohio, including conditions on death row. In *Wilkinson*, the Court stressed that "[u]nlike the 30-day placement [in segregation] in *Sandin*, placement at [the super-max prison] is indefinite," limited only by an inmate's maximum prison term, and "disqualifies an otherwise eligible inmate for parole consideration," thus potentially

extending the length of his incarceration. *Id*. The differences between the facts in Plaintiff's case and *Wilkinson* are clear. First, the MDOC transferred Plaintiff to the Carson City Correctional Facility rather than a "supermax" facility. The Carson City Correctional Facility is a Security Level I, II and IV facility. Plaintiff's confinement at Level IV does not approach the extreme conditions of the Ohio "supermax" facility in *Wilkinson*.[4] Second, Plaintiff's confinement does not effect his parole *eligibility*. Because Plaintiff's prison conditions are not "outside the realm of what is to be expected of prison life," *Sandin,* 515 U.S. at 485, Plaintiff's complaint fails to state a claim upon which relief can be granted.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

---

[4]"For an inmate placed in [the supermax facility], almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room." *Wilkinson,* 125 S. Ct. at 2394-95.

A Judgment consistent with this Opinion will be entered.


Date:   February 24, 2006            /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        CHIEF UNITED STATES DISTRICT JUDGE